## Case No. 9,893.

MOWRY et al. v. GRAND STREET & N. R. CO.

[10 Blatchf. 89; 5 Fish. Pat. Cas. 586.] [1]

Circuit Court, E. D. New York. June 25, 1872.

PATENTS — ASSIGNMENT — EXTENDED TERM — BRAKES FOR RAILWAY CARS—INJUNCTION.

1. T., having made an invention, and applied for letters patent for it, on a specification filed in the patent office, assigned to H., in 1852, "all the right, title, and interest whatsoever, which I now have, or, by letters patent, would be entitled to have and possess, in the aforesaid invention, the said invention being described in the specification as prepared and executed by me, or to be prepared and executed by me, for the obtaining of said letters patent, the whole to be held and enjoyed" by H., "to the full extent and manner in which the same would have been, or could me, held and enjoyed by me, had this assignment never been made," and authorized the issue of "the said" patent to H., "as the assignee of my whole right and title to the same, and to the new invention aforesaid." A patent was accordingly granted to H., on the invention, in 1852. In 1854, H. assigned to S. all his interest in any extended term of the patent. In 1866, the patent was extended to T.: *Held,* that, by the assignment of 1852. no right to the extended term passed to H., and, consequently, S. had no such right.

[Cited in Waterman v. Wallace, Case No. 17,-261.]

2. Whether the claim of the letters patent granted, July 6th, 1852, to Henry Tanner, as assignee of Lafayette F. Thompson and Asahel G. Bachelder, for an "improved mode of operating the brakes of railway cars," namely, "to so combine the brakes of the two trucks with the operative windlasses, or their equivalents, at both ends of the car. by means of the vibrating lever, A', or its equivalent, or mechanism essentially as specified, as to enable the brakeman, by operating either of the windlasses, to simultaneously apply the brakes of both trucks. or bring or force them against their respective wheels, and whether he be at the forward or rear end of the car." is limited to a combination of two or more brake systems, as they are ordinarily fcund in the swivelling car-trucks of an eight-wheeled car, with each other and with the operative windlasses. by means of a vibrating lever. or whether it covers any combination of the brakes of a car with each other, and with the windlasses, by means of a vibrating lever, so that all the brakes can be applied simultaneously from either end of the car, even where the car has no swivelling trucks with separate brake systems. quere.

3. The latter construction of the claim not having been maintained in any judicial decision, or acquiesced in by the public. and its novelty, on such construction, being shown to be doubtful. an application for a provisional injunction against an arrangement which was no infringement except on such construction, was refused.

[Motion for a provisional injunction. Suit brought [by James D. Mowry and others, against the Grand Street & Newton Railroad Company] upon letters patent for "improved mode of operating the brakes of railway cars," granted July 6, 1852, to Henry Tanner, assignee of Lafayette F. Thompson and Asahel G. Bachelder, and extended for seven years from July 6, 1866, to Bachelder, in his own right, and also to him and George O. Way, administrator of L. F. Thompson, deceased.][2]

Samuel D. Cozzens, for plaintiffs.
Tracy, Catlin & Van Cott, for defendants.

BENEDICT, District Judge. This is a motion for a preliminary injunction, to restrain the defendants from using upon their horse-cars a certain brake claimed to be an infringement upon what is known as the Tanner patent, which the plaintiffs are said to own. The motion was brought to a hearing before me on a former occasion, upon the plaintiffs' bill and moving papers alone, the defendants at that time interposing no denial of any of the averments in the plaintiff's papers. It is now before me upon additional papers on the part of the plaintiffs, and is now opposed by affidavits on the part of the defence.

One question now first presented in the case relates to the title of the plaintiffs. This question having been fully argued by counsel representing, for that purpose, the interest of Mr. Sayles, whose title is the one opposed to that of the plaintiffs, and having been fully considered, may be now disposed of, so far as my action is concerned.

The facts respecting the title to the patent are as follows: Prior to April, 1852, Lafayette F. Thompson and Asahel G. Bachelder had invented "an improved mode of operating the brakes of railway cars." Specifications presented by them were already before the patent office, which they were about to amend, and on which they were applying for letters patent. Before any patent was issued to them, they executed an assignment to one Henry Tanner, to whom, in pursuance of the statute, and in accordance with a requirement. inserted in the assignment, and upon amended specifications made by Bachelder, and dated April 8th, 1852, a patent for the invention was issued, on the 6th of July, 1852. In March, 1866, Tanner assigned to Bachelder and George O. Way, administrator of Lafayette F. Thompson, deceased, all the right, title, and interest which he then had in and to any extended term of the said letters patent, and, in July. 1866, the patent was extended, and a certificate of extension. dated July 5th, 1866, was issued to Bachelder and Way, from whom the plaintiff derives title. It appears, however, that Tanner, prior to his assignment. of March, 1866, to Bachelder and Way, and on the 13th of July, 1854, had assigned to Thomas Sayles all his right, title, and interest in any extended term of

1 [Reported by Hon. Samuel Blatchford, District Judge, and by Samuel S. Fisher, Esq., and here compiled and reprinted by permission. The syllabus and opinion are from 10 Blatchf. 89. and the statement is from 5 Fish. Pat. Cas. 586.]

2 [From 5 Fish. Pat. Cas. 586.]

the patent, whence it results, that if, by the first assignment of Bachelder and Thompson to Tanner, in April, 1852, the right to the extended · term was conveyed to Tanner, that right passed to Sayles by the assignment of July 13th, 1854, and the plaintiffs have no right thereto.

The question therefore is, whether the legal effect of the assignment of April 1st, 1852, from Bachelder and Thompson to Tanner, was to convey the right to the extended term of the patent in question to Tanner. The words of that assignment are as follows: "Whereas, we, Lafayette F. Thompson, of Charlestown, and Asahel G. Bachelder, now or late of Lowell, in the state of Massachusetts, have invented an improved mode of operating the brakes of railway cars, and have applied, or intend to apply, for letters patent of the United States of America therefor, now, therefore, this indenture witnesseth, that, for and in consideration of one hundred dollars in hand paid, the receipt whereof is hereby acknowledged, we have assigned and set over, and do hereby assign, sell and set over, to Henry Tanner, of Buffalo, in the state of New York, all the right, title and interest whatsoever, which we now have, or, by letters patent, would be entitled to have and possess, in the aforesaid invention, the said invention being described in the specification as prepared and executed by us, or to be prepared and executed by us, for the obtaining of said letters patent, the whole to be held and enjoyed by the said Henry Tanner, and his legal representatives, to the full extent and manner in which the same would have been, or could be, held and enjoyed by us, had this assignment never been made; and we do, by these presents, authorize the commissioner of patents to issue the said letters patent to the said Henry Tanner, and his legal representatives, as the assignee of our whole right and title to the same, and to the new invention aforesaid."

It is important, in determining the effect of this instrument, to notice, that, whatever else was the subject matter of the contract, it was not a share in the invention, nor a right restricted to any particular locality, and, further, that, at the time of its execution, no letters patent had been issued, but the inventors had an application for letters patent for the first term then pending in the patent office. At this time, therefore, the property of the inventors in this invention, capable of being the subject matter of such a contract; consisted of an inchoate right to a monopoly of their invention for a term of fourteen years, which right would be completed and secured by the letters patent for which they were then applying, and a further inchoate right to apply for and secure a monopoly for an extension of the term. Between these rights a distinction exists, arising from the fact that an extension of a patent is made dependent upon proofs of

new and different facts. It is a new grant (Wilson v. Rousseau, 4 How. [45 U. S.] 646, 682), the right to which is capable of being transferred in the same manner as the inchoate right to the monopoly for the first term, by an agreement disclosing such an intention (Railroad Co. v. Trimble, 10 Wall. [77 U. S.] 367). But, being contingent and personal to the inventor, it cannot be held to pass as an incident to the invention and appurtenant thereto. Clum v. Brewer [Case No. 2.909]. In this posture of the law and the facts, the inventors of this improvement sold to Tanner what they described as "all the right, title, and interest whatsoever which we now have, or, by letters patent, would be entitled to have and possess, in the aforesaid invention." In this description, the · words, "or, by letters patent, would be entitled to have and possess." as used, are words of limitation, and confine the grant to the right which would have been completed and secured by the letters patent for which the inventors were then applying. Clearly, it was not the intention, by those words, to extend the conveyance to all rights which would be secured by any letters patent whenever issued, and whether extended or not; for, subsequently in the instrument, the letters patent referred to are plainly designated as those for the obtaining of which specifications had been prepared and executed, and which were about to be amended. Extended letters patent are not issued upon specifications in that manner, and no other letters patent than those for the first term could be issued upon the pending application. These words, therefore, appear to me intended to limit the conveyance. They indicate that the subject matter of the contract, which was in the minds of the parties, was the monopoly which letters patent issued upon the pending application would secure, and show that the new grant which might be secured by the inventors upon a future application for an extension, but which could not be given upon any proofs then pending, or likely to be then in contemplation, was not intended to be covered by the contract. This conclusion is entirely consistent with the broad words of the habendum clause. The habendum says. "the whole to be held." &c. The whole of what? Manifestly, the whole of the right described in the granting clause, and no more. Moreover, I find, in this instrument, no words which import an intention to transfer both a present and a future interest; and words which imply that two inchoate rights, different in character, were intended to be assigned, are wanting. One such right is clearly described, and there is no allusion to any other.

Furthermore, it is highly improbable that the right to the extension would have been intended to be conveyed, for the reason, that an assignment of the right to the extension

would in effect destroy the right, as extensions of patents are issued to inventors only, and are not granted to assignees. It cannot be supposed, that any part of the consideration expressed in this instrument was paid by the assignees for what would be valueless in their hands; and it is equally unlikely that the inventors would part with such a right without consideration. Such an intention, if entertained, it may be believed would have been expressed in clear and distinct language.

Nor do I see that a different conclusion can be arrived at, if the instrument be a conveyance of the whole invention, without words of limitation, in view of the repeated decisions, that a conveyance of the invention merely does not carry the right to the extension. These decisions the late decision of the supreme court in the case of Nicholson Pavement Co. v. Jenkins, 14 Wall. [81 U. S.] 452, which has been here relied on as declaring a different law, appears to me to confirm. That decision assumes, that an assignment of the invention, without words importing an intention to convey both a present and a future interest, will not pass the right to an extension. Such words being absent from the instrument under consideration, the intention must be considered as absent. It was easy to have inserted such words, but this was not done; and, in view of the right of the inventors personally, in certain contingencies, to apply for and secure an extension, their absence leads to the conclusion, that the parties did not contract with reference to it.

The question raised as to the title of the plaintiffs to letters patent having been thus found in favor of the plaintiffs, I proceed to consider whether the validity of the patent has been so well established by judicial determination, or so generally asquiesced in, as to entitle them to an injunction before a hearing of the cause; and here is met an issue which has been raised in respect to the invention intended to be secured by the letters patent in question. The claim in the patent is as follows: "What is claimed by us is, to so combine the brakes of the two trucks with the operative windlasses, or their equivalents. at both ends of the car, by means of the vibrating lever, A', or its equivalent, or mechanism essentially as specified, as to enable the brakeman, by operating either of the windlasses, to simultaneously apply the brakes of both trucks, or bring or force them against their respective wheels, and whether he be at the forward or rear end of the car." If this claim limits the invention to a combination of two or more brake systems, as they are ordinarily found in the car trucks of an eight-wheeled car, with each other and with the operative windlasses. by means of a vibrating lever, it is manifest that the defendants do not use the plaintiffs' combination, for they do not use cars running upon trucks whose systems are operated in combination with a vibrating lever and the windlasses. They use the ordinary four-wheeled horse cars, in which there are no trucks with separate brake systems, and, consequently, no free swivelling action by means of trucks or their equivalents.

The plaintiffs contend, that the patent is not thus limited, but that it covers any combination of the brakes of a car with each other and with the windlasses, by means of a vibrating lever, so that all the brakes can be applied simultaneously from either end of the car, and that the ordinary brake of street cars, such as is used by the defendants, is, therefore, within the scope of the patent, and an infringement. To this position the defendants answer, that, so understood, the patent is void for want of novelty, and has never been sustained by any judicial determination or acquiesced in by the public. I do not find it necessary, upon this motion, to determine whether or not the construction of the patent contended for by the plaintiffs can be maintained. It is sufficient, for this motion, to say, that such a construction of it has not as yet been maintained in any of the suits brought upon this patent, to which the plaintiffs refer. All these suits related to eight-wheeled railroad cars, having two truck systems combined and attached to the windlasses through a vibrating lever. No suit hitherto decided has involved the question which is here presented. The evidence given in those suits related to eight-wheeled truck cars, and the decisions rendered therein cannot be claimed to be judicial determinations in favor of the plaintiffs' patent as here sought to be construed. They appear to be entirely consistent with a construction of the patent in accordance with the views of the defendants, and in accordance with a conclusion that the defendants do not infringe the patent. The issue in this case, as to the validity of the patent, is, therefore, new; and, not only is the novelty of the invention, as now claimed, denied, but a fair doubt in respect to its novelty is raised by affidavits introduced to show a prior use, in the construction of a car, of a combination claimed to be substantially similar to the combination of the plaintiffs, as they now seek to have it construed. It is, also, made clear, that, while the patent, as understood by the defendants, and as limited to truck cars, has been acquiesced in by the public, there has been no public acquiescence in the claim now put forth, but the validity of the patent. so construed, has been constantly denied. I must, therefore, in accordance with well-settled rules, and without intimating an opinion as to the proper construction of the patent, refuse an injunction, until after final hearing, upon the ground, that there has been no judicial inquiry into the novelty of the invention now claimed by the plaintiffs, and no public recognition of the validity of

the patent, as securing such an invention, but, on the contrary, its validity is in doubt.

[For other cases involving this patent, see note to Sayles v. Chicago & Northwestern Ry. Co., Case No. 12,414.]